No. 98-548

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 324 [56 St.Rep. 1295]

297 Mont. 321

992 P.2d 831

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JOHN ART BENSON,

Defendant and Appellant.

APPEAL FROM: District Court of the Tenth Judicial District,

In and for the County of Petroleum,

Honorable John R. Christensen, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Chris J. Nelson, Attorney at Law, Billings, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; C. Mark Fowler,

Assistant Attorney General, Helena, Montana

Nickolas C. Murnion, Special Deputy County Attorney, Jordan, Montana

Submitted on Briefs: October 28, 1999

Decided: December 22, 1999

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶ John Art Benson allegedly stole and butchered his neighbor's cow. He was charged with felony theft, pursuant to § 45-6-301(1), MCA, and mutilating a hide. A jury in the Tenth Judicial District Court, Petroleum County, found Benson guilty of theft. He was sentenced to five years in prison, suspended on certain conditions. Benson appeals. We affirm his conviction.

¶ On appeal, we consider the following issues:

¶ 1. Whether there was sufficient evidence to prove that Benson committed felony theft.

¶ 2. Whether the District Court committed reversible error when it admitted into evidence records that were not provided prior to trial.

FACTUAL BACKGROUND

¶ Benson admits that on December 5, 1996, he killed a cow on his ranch and prepared it to be butchered. The following day a fire was visible on his land. Partially-burned remains of a cow and a fresh waste pile were discovered at the site of the fire. Included in the remains were a cow's head and a red-colored hide with a hole cut into the middle of the left side. In the waste pile was an immature uterus which had no ovaries attached to it.

¶ This evidence was used to prove that Benson stole and butchered a cow belonging to Juanita Holmberg, who keeps her cattle on land near Benson's property. Holmberg has Hereford cattle, which normally have red-colored hides. She testified that each year she brands approximately 10 of them on the left rib, where the hole was cut into the hide. Also, Holmberg spays her heifers and was likely the only person in the area who did so that year. Dr. Stackhouse, of the Department of Livestock Veterinary Diagnostic Laboratory, testified that the cow Benson butchered probably had been surgically spayed based on its immature uterus and its missing ovaries. Although Holmberg kept spayed heifers in the pasture near Benson's property, she could not say with certainty if she lost any of them.

¶ Benson testified that the cow he butchered had his son's brand on the left rib. He disputed Dr. Stackhouse's opinion that the cow butchered was one and one-half to two-years old and said it was two and one-half years old. He explained that the cow had been dry the previous year and did not get pregnant in the current year, so he decided to slaughter it.

¶ Benson's son, J.B., testified that he traded a dry cow with his father but that he was uncertain about the details of how old or what color the cow was. In a recorded statement made before trial, J.B. said the cow was around four or five, but also stated that he was not certain. At trial, J.B. admitted that he did not have any spayed heifers.

¶ The State established that a cow bearing J.B.'s brand had been sold at the Miles City Livestock Auction on November 26, 1996. The State wanted to prove that this was the cow J.B. traded with his father. When the prosecution attempted to admit Department of Livestock

records confirming the sale, labeled as proposed Exhibits 34 and 35, Benson objected on the grounds that there was no connecting factor between the records and the cow at issue. The court, however, overruled Benson's objection because a witness testified that the records suggested that the cow sold at auction was dry based on the amount of the sale. Benson then objected on the grounds that the records had not been provided to him prior to trial. The District Court Judge responded, "I would have probably sustained on that, but I have admitted them now." Benson submitted a continuing objection.

¶ The jury found Benson guilty of theft and acquitted him of the charge of mutilating a hide. He was sentenced to five years in prison, suspended on certain conditions including the payment of $500 restitution to Juanita Holmberg. Benson appeals.

ISSUE 1

¶ Was there sufficient evidence to prove that Benson committed felony theft?

¶ We review the sufficiency of evidence in a criminal case to decide whether, upon viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See State v. Heffner, 1998 MT 181, ¶ 22, 290 Mont. 114, ¶ 22, 964 P.2d 736, ¶ 22. In this case, the State was required to prove that Benson purposely or knowingly obtained or exerted unauthorized control over Holm-berg's cow with the purpose of depriving her of it. See § 45-6-301(1), MCA.

¶ Benson argues that a rational trier of fact could not have concluded that he stole and butchered Holmberg's cow because the evidence did not prove beyond a reasonable doubt that

the head and uterus found were that of a one and one-half- to two-year-old cow as opposed to a two and one-half-year-old cow. After Dr. Stackhouse stated that the head of the cow was that of a one and one-half- to two-year-old cow based on the eruption of the teeth from its jaw, he conceded that the head could have been that of a two and one-half-year-old cow. In addition, although Dr. Stackhouse testified that the cow's immature uterus could have been due to her missing ovaries, he admitted that he found no evidence that the ovaries had been surgically removed. Dr. Stackhouse acknowledged that the immature uterus could have been due to the fact that the cow never had a calf, which was Benson's explanation for butchering it.

¶ The applicable rule of law is that the jury has a prerogative to accept or reject testimony. When a jury is confronted with two versions of an incident, one version that supports acquittal and another that supports a conviction, the jury must determine which version is reasonable. See State v. Crazy Boy (1988), 232 Mont. 398, 401, 757 P.2d 341, 343. In this case, the District Court correctly instructed the jury that it was not bound to accept the opinion of the expert witness as conclusive. Nonetheless, the jury had the prerogative to do so.

¶ Since the evidence of the cow's head and uterus, along with its hide, can link it with a cow once belonging to Holmberg, we conclude that a rational trier of fact could find that Benson deprived Holmberg of her cow and butchered it. Benson does not contest any other evidence. Thus, we conclude that there was sufficient evidence to support his conviction.


ISSUE 2

¶ Did the District Court commit reversible error when it admitted records that were not

provided prior to trial?

¶ Benson argues that the District Court abused its discretion when it allowed the State to introduce Exhibits 34 and 35, which were Department of Livestock records confirming the sale of J.B.'s cow at auction. On appeal, Benson argues that the District Court's decision to admit these records was inconsistent with its previous ruling in which it denied defense counsel permission to play an audio tape that had not been previously listed as an exhibit.

¶ However, Benson fails to cite legal authority to support his argument. We have recognized that evidentiary matters turn on relevancy and adequacy of the foundation of the evidence, not on whether the District Court's rulings were consistent. See State v. Brodniak (1986), 221 Mont. 212, 230, 718 P.2d 322, 334. We also recognize that the trial court judge has a wide latitude of discretion in determining the admission of evidence. See Brodniak, 221 Mont. at 230, 718 P.2d at 334.

¶ Furthermore, Benson did not properly preserve his argument for appeal. The record indicates that Benson objected to Exhibits 34 and 35 only on the bases of relevancy and lack of notice. At trial, he did not raise a specific objection on the basis of an inconsistent ruling. In order to preserve an objection for purposes of appeal, the objection made must be sufficiently specific. See Kizer v. Semitool, Inc. (1991), 251 Mont. 199, 207, 824 P.2d 229, 234. An objection which is too general in nature is not sufficient. We will not put a district court in error where it was not given an opportunity to correct itself. See State v. Weeks (1995), 270 Mont. 63, 85, 891 P.2d 477, 490.

¶ Benson has not established any other reason that the admission of Exhibits 34 and 35 constitutes reversible error. In its response brief, the State argues that it had good cause not to provide pretrial notice of these exhibits because, as the prosecution explained at trial, it did not obtain the exhibits until the day it sought to introduce them and it did not anticipate using them until J.B. gave unexpected testimony. In his reply, Benson asserts that the record demonstrates that good cause had not been shown. However, Benson again fails to provide legal authority to support his argument. Benson does not cite an applicable statute, claim surprise, or provide us with any other basis to require good cause for failure to give notice of these exhibits.

¶ In addition, we conclude there was no prejudice to Benson because these exhibits were merely cumulative evidence. Earlier at trial, when the State questioned J.B., he admitted the same information contained in the exhibits: that a cow bearing his brand was sold at the Miles City Livestock Auction on November 26, 1996, and that the cow could have been dry based on the amount of the sale. Although proposed Exhibits 34 and 35 were used during J.B.'s testimony, Benson did not object.

¶ Even if the exhibits had been improperly admitted, we find reversible error based on prejudice to the defendant only where there is a reasonable possibility that the inadmissible evidence might have contributed to the conviction. See State v. Link, 1999 MT 4, ¶ 29, 293 Mont. 23, ¶ 29, 974 P.2d 1124, ¶ 29. Benson contends that the admission of Exhibits 34 and 35 led to his conviction because they linked the cow he acquired from J.B. with the one sold at auction, instead of the one he slaughtered. However, we are not convinced that Exhibits 34 and 35 led to his conviction. In Issue 1, we concluded that evidence of the cow's head, uterus and

hide was sufficient to link the cow Benson slaughtered with one belonging to Holmberg. Here, we conclude that J.B.'s testimony provided the jury with the same information as Exhibits 34 and 35.

¶ Finally, Benson argues that the District Court was incorrect when it suggested that once an exhibit is admitted it cannot be withdrawn. He cites Specht v. Howard (1872), 83 U.S. 564, 21 L.Ed. 348, 16 Wall. 564, for the proposition that the trial court, if on reflection, believes it has committed error in admitting evidence, may withdraw or permit the withdrawal of evidence to cure the error. However, he provides no authority for the proposition that the District Court must withdraw the evidence.

¶ Thus, we conclude that the District Court did not commit reversible error when it admitted Exhibits 34 and 35.

¶ Therefore, we affirm the District Court.

/S/ J. A. TURNAGE

We concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART