FILED

October 22 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 08-0341

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 350

IN THE MATTER OF
B.I. and N.G.,

      Youths.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADJ 07-149
Honorable Thomas M. McKittrick, Presiding Judge

COUNSEL OF RECORD:

    For Appellants:

        Jim Wheelis, Chief Appellate Defender; Joslyn M. Hunt, Assistant
Appellant Defender; Helena, Montana

    For Appellee:

        Hon. Steve Bullock, Montana Attorney General; Jonathan M. Krauss,
Assistant Attorney General; Helena, Montana

        John Parker, Cascade County Attorney; Matthew Robertson, Deputy
County Attorney; Great Falls, Montana

Submitted on Briefs:  June 10, 2009

Decided:  October 21, 2009

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     The appellant youths in this matter, B.I. and N.G. (Youths), appeal from orders entered in the Eighth Judicial Youth Court, Cascade County (Youth Court), revoking their Consent Adjustments and committing them to area youth homes.  We affirm.

¶2     We recharacterize the issue on appeal as follows:

¶3     Did the appellant Youths waive their right to challenge the constitutionality of § 41-5-1512, MCA, which allows a youth court to enter judgment and proceed to disposition if a youth is found to have violated a consent adjustment?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     The Youths in this matter each entered into an informal Consent Adjustment without Petition (Consent Adjustments) in the Cascade County Youth Court.  Each Youth subsequently violated certain aspects of the Consent Adjustments and, as a result, the State filed petitions to revoke the adjustments in the Youth Court.  The Youth Court held hearings on the State's petitions in which the Youths were represented by counsel and admitted the alleged violations.  The Youth Court then revoked the Consent Adjustments and proceeded to formal disposition under § 41-5-1512, MCA.  The Youths appealed and we consolidated the separate cause numbers for our review.  A brief summary of each case is provided below.

¶5     **I.  In re B.I., Cause No. ADJ-08-104, Cascade County:**

¶6     In 2008, B.I. entered into a Consent Adjustment in which she admitted committing the offenses of Criminal Possession of Drug Paraphernalia by possessing a pipe and

2

Obstructing a Peace Officer by withholding information and giving false information during a drug investigation. B.I. was not represented by counsel at the time she agreed to the Consent Adjustment, which required B.I. to refrain from using drugs and report to a local youth home. B.I. acknowledged that the Consent Adjustment was voluntary and that any violations could result in formal disposition before the Youth Court.

¶7 Two days after B.I. entered into the Consent Adjustment, B.I. failed to appear at the youth home and tested positive for marijuana. The State filed a petition with the Youth Court alleging that B.I. had violated the terms of her Consent Adjustment. The Youth Court held a hearing on the State's petition. During the hearing B.I. was advised of her rights including the right to explain, argue, and rebut the allegations. B.I. answered "true" to the State's allegations. B.I.'s counsel stated that B.I. was willing to start drug treatment, juvenile drug treatment court, and did not object to being on probation for a minimum of one year. B.I.'s counsel, however, also stated the following:

> [Y]our Honor, this has been a continuing issue, restriction of moving from dispositional—or moving from revocation on informal consent adjustment to formal disposition. And that matter—we did file a writ to the Supreme Court on those questions regarding the common practice in this court right now.

B.I.'s counsel did not provide a substantive explanation of the application for the writ or expand upon his concern with "moving from revocation on informal consent adjustment to formal disposition." Instead, counsel generally stated that the issue was "procedural." The Youth Court then noted that a stay in the matter had not been ordered and proceeded to formal disposition under § 41-5-1512, MCA. The Youth Court reinstated B.I.'s probation and placed B.I. in an area youth home. We denied B.I.'s request for

3

supervisory control and granted B.I. an out of time appeal. In denying the writ, we stated: "[i]t is not clear whether the youth has raised her complaints against the trial court's procedures in the trial court, and what decision, if any, the trial court has rendered thereon."

¶8     **II. In re N.G., Cause No. ADJ-07-149, Cascade County:**

¶9     In 2007, N.G. entered into a Consent Adjustment in which he admitted committing numerous offenses, including disorderly conduct, theft, and runaway. N.G. agreed to be placed on probation for 12 months (or until released sooner) and to abide by the conditions of his probation. N.G. was not represented by counsel at the time he entered into the Consent Adjustment, but acknowledged that the program was voluntary and that he could be required to appear in Youth Court for disposition if he violated any terms of the Consent Adjustment.

¶10     Three months after he entered into the Consent Adjustment, N.G. missed several days of school and did not appear at required meetings. The State filed a petition to revoke and requested a hearing. N.G. appeared with counsel at a hearing in November 2007 in which he answered "not true" to the State's allegations. A few days after the hearing N.G. left home without permission. N.G. was not picked up until March 2008. During a detention hearing before the Youth Court, N.G. stipulated that he violated the terms of his release. In a separate hearing, on June 4, 2008, N.G.'s counsel stated that N.G. was prepared to change his answer to the petition to revoke. N.G. changed his answer to "true," and the State provided recommendations for disposition, which included that N.G. be placed in an area group home. Counsel for N.G. informed the court

that he did not have the opportunity to speak with N.G. about the State's recommendations and stated the following:

> [Y]our Honor, this is another consent adjustment case. And we would argue, of course, from proceeding to disposition. I did take another case up on a writ, and the Supreme Court responded that it needed to be brought up on appeal, and so it is still in that process.

The Youth Court inquired about the status of the writ application and was informed that it had been denied. The Youth Court then placed N.G. in a group home and ordered N.G. to comply with the conditions of his probation for one year. N.G. appealed.

## Standard of Review

¶11 Whether a person has been denied due process of law presents a constitutional question of law; our review of such questions is plenary. *In re the Mental Health of E.T.*, 2008 MT 299, ¶ 7, 345 Mont. 497, 191 P.3d 470. We review a youth court's interpretation and application of the Youth Court Act for correctness. *In re K.D.K.*, 2006 MT 187, ¶ 15, 333 Mont. 100, 141 P.3d 1212.

## Discussion

¶12 After a preliminary inquiry, the Montana Youth Court Act authorizes a probation officer to enter into a Consent Adjustment Without Petition, or informal disposition, with a youth who, among other things, appears to be a youth in need of intervention. A youth in need of intervention is generally defined as a youth who commits "an offense prohibited by law that if committed by an adult would not constitute a criminal offense," including, for example, a youth who violates Montana law regarding alcoholic beverages

5

or exhibits behavior that is beyond the control of the youth's parents. Section 41-5-103(51)(a), MCA.

¶13 Consent adjustments are voluntary and must be signed by the youth and the youth's parents or the person having legal custody of the youth. Section 41-5-1302(1)(a), MCA. Various dispositions may be imposed by consent adjustment, including probation, placement in a youth home, restitution, and counseling services. Section 41-5-1304, MCA. When a youth is found to have violated a consent adjustment, a youth court is authorized to enter judgment and make a variety of dispositions pursuant to § 41-5-1512, MCA. Although considered formal disposition, the Montana Youth Court Act does not require a county attorney to file a formal charging petition when a youth is alleged to have violated a consent adjustment.[1]

¶14 N.G. and B.I. challenge § 41-5-1512, MCA, which allows a Youth Court to enter judgment and make various dispositions if the youth is found to be a youth in need of intervention or to have violated a consent adjustment. The Youths claim that § 41-5-1512, MCA, is unconstitutional both on its face and as applied because it provides for formal revocation and disposition based upon admissions made through an informal, voluntary means. The Youths argue that without a formal charging petition, "the State and the youth court effectively take the informal admissions and equate them as formal admissions or equate them as a finding of a youth in need of intervention." According to

---

[1] Under the Montana Youth Court Act, the State is not required to file a formal petition when a youth has violated a consent adjustment. The State must file a petition if the youth is a delinquent youth or a youth in need of intervention. *See* Section 41-5-1401, MCA.

the Youths, by proceeding in this manner, the State is relieved of its burden of proof and the Youths' constitutional rights are violated.

¶15 In response, the State argues that the Youths waived the sole issue on appeal—whether § 41-5-1512, MCA, is constitutional—by failing to properly object to the issue in the Youth Court. The State relies on our decision in *State v. West*, 2008 MT 338, ¶ 16, 346 Mont. 244, 194 P.3d 683, for the proposition that an issue must be timely raised in the trial court in order to be preserved for appeal. The State contends that the only objection made by the Youths in Youth Court related to procedural misgivings, not to the constitutionality of § 41-5-1512, MCA. Additionally, the State notes that the Youths (with counsel) acquiesced to the disposition, did not present any argument as to the alleged unconstitutionality of the statute, or give the Youth Court the opportunity to address the Youths' constitutional concerns. These actions, the State argues, support the contention that the issue of whether § 41-5-1512, MCA, violated the Youths' due process rights was not properly preserved for appeal.

¶16 We agree with the State that the Youths did not properly preserve their argument that § 41-5-1512, MCA, is unconstitutional. In order to preserve an objection for appeal, a party must state grounds for the objection that are sufficiently specific. *See State v. Benson*, 1999 MT 324, ¶ 19, 297 Mont. 321, 992 P.2d 831. A general objection to an alleged error is not sufficient. *Benson*, ¶ 19. We have stated numerous times that we will not fault a district court where it was not given an opportunity to correct itself. *Benson*, ¶ 19. Here, the Youths did not state with any particularity their concerns about the unconstitutionality of § 41-5-1512, MCA. Instead, counsel characterized the issue as

"procedural" and merely suggested that there was an issue with moving directly from an informal revocation of a consent adjustment to formal disposition. Although the Youths did petition for a writ of supervisory control, this Court denied the petition for the reason that the Youths needed to first raise the issue before the District Court and obtain a ruling from that court. This, they failed to do. By not specifying the nature of the objection, the Youths failed to preserve the issue for appeal. The Youths concede that plain error review is unnecessary, and therefore we do not address this issue further.

¶17 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS